**No. 23-638,** *Caitlin R. Workman v. ACNR Resources, Inc.*

**Armstead, Justice, dissenting, and joined by Justice Bunn:**

I dissent as to the majority's decision to reverse the decision of the Intermediate Court of Appeals and to remand this case to the Board of Review with directions to award the petitioner temporary total disability (TTD) benefits and additional testing and treatment. Our standard of review is set forth in syllabus point three of *Duff v. Kanawha County Commission*, 250 W. Va. 510, 905 S.E.2d 528 (2024), which provides:

> On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Based upon the record and West Virginia Code § 23-4-3(a)(1), the BOR's finding that additional testing and treatment (EMG, MR arthrogram, additional physical therapy and orthopedic consultation) were not causally related to the compensable conditions of a laceration and a contusion was not clearly wrong, and therefore, should have been given deference and affirmed. I also would have accorded the BOR's factual findings deference relating to its affirmance of the claim administrator closing the claim for TTD benefits, as the petitioner failed to show that the BOR's factual findings that she

had reached her maximum degree of improvement were clearly wrong. *See* W. Va. Code § 23-4-7a.

The petitioner's claim was held compensable for a laceration without foreign body of the right back and contusion of the right shoulder. Following this decision, the petitioner made complaints about weakness, decreased grip strength and shaking in her right hand ("RUE complaints"), which led to requests for additional testing and treatment. Regarding her requests for additional treatment, the BOR found that "the evidence does not indicate that the complaints are the result of a laceration and a contusion," and found the requested treatments were not "casually related to the current compensable conditions." Further, as to closing the claim for TTD benefits, the BOR considered Dr. Mukkamala's independent medical evaluation of the petitioner, noting that, as of the date of his evaluation, the petitioner had reached maximum medical improvement ("MMI") for her compensable conditions and did not require further treatment. The BOR explained its conclusion affirming the claim administrator closing the claim for TTD benefits, stating "the evidence does not indicate that the complaints are due to the current compensable conditions," but instead, "the evidence establishes that at the time the TTD was suspended, the [petitioner] had reached MMI from the compensable conditions and could return to work with no restrictions."

There appears to be no dispute that the petitioner made RUE complaints after her claim was held compensable for a laceration and a contusion. In fact, at the time of her independent medical evaluation, Dr. Mukkamala noted that she "complained of pain over the right shoulder, mostly in the scapular area" and "weakness in the right arm." Those complaints, however, should not result in the reversal of the ICA's decision because the BOR was not clearly wrong in its findings of facts, as petitioner failed to provide evidence that her RUE complaints were due to her compensable conditions.

As the majority notes, the BOR performed a "thorough recitation of the evidence submitted by the parties." The BOR did not ignore the reports of the petitioner's treating physicians. Over half of the BOR's findings of fact refer to medical records of the petitioner's treating physicians. Following its review, the BOR concluded, and I agree, that the petitioner failed to establish that her requests for additional testing and treatment were medically necessary and reasonably related to her compensable conditions, and that she was at MMI from the compensable conditions and able to return to work.

The BOR certainly was not clearly wrong, and indeed, was correct in its findings of fact, because the petitioner failed to supply any evidence that her RUE complaints were related to her compensable conditions, a laceration and a contusion. With respect to the evidence that is required, the majority relies upon the presumption articulated

in *Dunlap v. State Work. Comp. Comm'r*, 160 W. Va. 58, 232 S.E.2d 343 (1977), which provides as follows:

> If an injured employee provides some evidence to demonstrate that a particular injury did arise from the subject industrial accident, absent evidence which to some degree of certainty attributes the injury to a cause other than the subject accident, it will be presumed to have resulted from such accident.

*Id.* at Syl. Pt. 2.

However, the presumption in *Dunlap* "is not intended to substitute a presumption for proof. *The injured employee is still required to supply evidence that his injury did result from the subject industrial accident.*" *Id.* at 64, 232 S.E.2d at 346 (emphasis added). As the BOR noted, the petitioner provided medical documentation that she had RUE complaints and that she remained temporarily and totally disabled following the claim administrator's decision to close her claim for temporary total disability ("TTD") benefits. However, she failed to connect those complaints to her compensable conditions, and thus the BOR was not clearly wrong when it found that (1) she failed to establish that the requests for additional testing and treatment she sought were medically necessary and reasonably related to her compensable injuries; and (2) she was at MMI and able to return to work based upon her compensable conditions.

4

An exhaustive recitation of the medical evidence on this topic is unnecessary as the petitioner's counsel essentially admitted, during oral argument, that the petitioner did _not_ supply this necessary evidence. When asked if there was any medical evidence in the record that indicated that the petitioner's weakness and tremors were related to her compensable conditions, her counsel responded "I don't know that there is any specific line in any report that says this is what caused that." The petitioner's failure to provide this evidence, linking her complaints to her compensable conditions, is dispositive.

Further, the majority's finding that the BOR failed to conduct a proper analysis of the medical evidence submitted by the parties is belied by the petitioner's failure to provide the necessary medical evidence. Although the petitioner provided medical evidence that she made RUE complaints, the evidence did not indicate that the RUE complaints were related to her compensable conditions, and the BOR was not clearly wrong in making corresponding findings of fact. I believe the majority's ultimate decision reflects its belief that the petitioner, who was an "otherwise health twenty-three-year-old worker" would not have developed right upper extremity ("RUE") complaints in the absence of her compensable injuries. The record, however, provides no support for such conclusion, and there is nothing in the record to support the decision that the majority is now directing. Instead, the majority inserts its judgment and fact-finding into the evidence at issue, rather than giving BOR the requisite deference afforded to it in syllabus point three of _Duff v. Kanawha Cnty. Comm'n_, 250 W. Va. 510, 905 S.E.2d 528.

5

For the foregoing reasons, I believe the ICA did not err in upholding the BOR's decision. Accordingly, I respectfully dissent from the majority's decision in this case. I am authorized to state that Justice Bunn joins in this dissent.